UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION

NICHOLAS THOMPSON,              )
                                )
            Plaintiff,           )
                                )
     v.                          )       No. 4:05 CV 1932 DDN
                                )
MICHAEL J. ASTRUE,[1]            )
Commissioner of Social Security, )
                                )
            Defendant.           )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Nicholas Thompson for disability insurance benefits and supplemental security insurance benefits under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. § 401, et seq., and 42 U.S.C. § 1381, et seq., respectively. The parties have consented to the exercise of plenary authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## Background

On October 31, 2001, plaintiff applied for disability benefits. He alleged he became disabled on October 1, 2001, at the age of 23, due to nervous system problems affecting his eye-hand coordination, nystagmus,[2] and other vision problems. (Tr. 159, 253, 270.)

Following an evidentiary hearing on September 9, 2004, an administrative law judge (ALJ) concluded plaintiff was not disabled and denied benefits. (Tr. 8-18.) Because the Appeals Council denied review

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as defendant in this action. 42 U.S.C. § 405(g).

[2]Nystagmus is an involuntary, rapid movement of the eyeball. Webmd.com/hw/vision/shc29nys.asp. (Last visited February 12, 2007.)

of the ALJ's decision (Tr. 3-5), it became the final decision of the Commissioner for review in this action.

## **General Legal Principles**

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court must consider evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence supports that decision, the court may not reverse it merely because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); 1382c(a)(3)(A). The Commissioner's regulations provide a five-step procedure for generally evaluating the claims of disability. See 20 C.F.R. §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, the indicated decision is made and the next step is not reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In plaintiff's case, at Step Four, the ALJ determined that plaintiff could not perform his past relevant work. (Tr. 17.) Therefore, at Step Five, the burden shifted to the Commissioner to show that plaintiff can perform other substantial gainful activity in the national economy. Goff v. Barnhart, 421 F.2d 785, 790 (8th Cir. 2005).

**The ALJ's Decision**

In a January 5, 2005 decision, the ALJ found that plaintiff had low vision, major depressive disorder, anxiety, borderline to low average intelligence, insulin dependent diabetes mellitus, and a low back disorder. (Tr. 12, 17.) The ALJ found that plaintiff had the residual functional capacity (RFC) to lift 50 pounds and to occasionally carry 30 pounds; that he had a verbal IQ of 87, a performance IQ of 77, and a full scale score of 80; visual acuity of 20/50 in each eye and for both eyes together, or a distance visual acuity in one eye of 20/60 and 20/100 in the other, and 20/40 near vision. Plaintiff could perform less than the full range of light work, but the ALJ found that there was a significant number of jobs he could do.[3] (Tr. 17.)

The ALJ considered the testimony of plaintiff, his father, and his former boss, Jim Fowle. The ALJ found that plaintiff's complaints of an inability to drive, falling down, and walking into walls are not consistent with even his limited vision, which the ALJ found was 20/50 to 20/60 in one eye, and 20/60 to 20/100 in the other eye. The ALJ also noted plaintiff had only been to the doctor one time for his back pain.[4]

---

[3]The ALJ based this determination on the testimony of vocational expert (VE) John E. Grenfell, who was posed this question at the hearing:

> If we had a hypothetical individual, with the Claimant's age, education, training, past relevant work experience. If the individual has a visual acuity of 20/50, at a distance, for each eye and both eyes together, with a near vision, near visual acuity of 20/60, again for each eye and both eyes together, . . . with a verbal IQ of 95, performance 83, full scale 89, in the average range. If the individual were limited, exertionally, to light work, with the ability to occasionally lift 50 pounds and to occasionally carry 30 pounds, would there be jobs such a hypothetical individual could perform?

(Tr. 84.) The VE testified that there were many jobs such an individual could do, such as working in a laundry folding clothes, or washing dishes. (Tr. 84-85.)

[4]On September 14, 2004, plaintiff reported severe back pain since February. He described it as rating "10" on a 10-point scale. Plaintiff was to wear a brace, do lumbar exercises, take prescription pain medication, and return in four weeks. (Tr. 272-73.)

-3-

There was no evidence in the record that plaintiff's diabetes was uncontrollable. The ALJ found that his finding that plaintiff could not do his past relevant work was consistent with the testimony of Fowle and plaintiff's father, who both testified that plaintiff was unable to do his past work. However, the ALJ also noted that these witnesses did not state that plaintiff could do no work. (Tr. 12, 14, 16.)

The ALJ noted that plaintiff's psychiatric disorders have only recently been diagnosed, and he had never been treated for them. The ALJ found that they did not persist for 12 months as required for a disability determination. Further, the ALJ found that the consulting psychologist's opinion was inconsistent with the record and not credible.[5] (Tr. 13, 15.)

## Plaintiff's grounds for relief

Plaintiff argues that the decision of the ALJ was not supported by substantial evidence. Specifically, he argues that (1) the ALJ failed to properly evaluate the report of psychologist Vincent Stock, (2) the ALJ erred when evaluating the testimony of plaintiff, his father, and his former employer, and (3) there is not substantial evidence on the record supporting a decision that plaintiff could perform other work in the economy. (Doc. 12 at 6.)

## Discussion

### A. Report of Psychologist Vincent Stock

---

[5]On August 31, 2004, Vincent F. Stock, M.A., a licensed psychologist, conducted a consultive examination of plaintiff at the request of plaintiff's attorney. After administering the Wechsler IQ test, he found plaintiff had a full scale score of 80. He assessed plaintiff with major depressive disorder, generalized anxiety disorder, dependant personality disorder, borderline intellectual functioning disorder, a history of visual problems, diabetes, a current bulging disc, a history of carpal tunnel syndrome, occupational problems, and a Global Assessment of Functioning Score of 45, which indicates serious symptoms.

In his report, Mr. Stock noted that plaintiff was cooperative and friendly, his thought processes were intact, he was fully oriented, he was able to drive locally, he vacuumed, cooked, went to the store, did laundry, and mowed the lawn. He socialized with family and a few friends. (Tr. 285-91.)

The ALJ must determine plaintiff's RFC to decide whether he is disabled or not. Plaintiff's RFC is the most he can do despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining plaintiff's RFC, the ALJ must consider all of the relevant evidence. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). The determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

Regarding the report of psychologist Stock, the opinion of a consultant who examines a claimant once or not at all is not usually considered substantial evidence. Kelley v. Carnahan, 133 F.3d 583, 589 (8th Cir. 1998). In his opinion, the ALJ discussed the opinion of Mr. Stock and found it not credible. (Tr. 13.) Psychologist Stock saw plaintiff one time. Also, the opinion of Mr. Stock was not internally consistent, nor consistent with other evidence on the record. Despite finding that plaintiff had "marked" limitations in daily activities and social functioning (Tr. 294), he reported that plaintiff vacuumed, cooked, grocery shopped, did laundry, mowed the lawn, and visited with family. No other physician had determined that plaintiff had a GAF of 45, and plaintiff had not before then been diagnosed with depression, nor has he been treated for it since that time.

Plaintiff argues that Mr. Stock's report is consistent, because plaintiff was diagnosed with general anxiety in 1998. A vocational evaluation did assess plaintiff with moderate anxiety on August 10, 1998, but even this report states that plaintiff was punctual, had perfect attendance, was properly dressed and groomed, and was pleasant with staff. (Tr. 188-89.) Further, there is no indication from the record or from plaintiff's own testimony that he received any treatment for anxiety or any other mental illness.

Therefore, the ALJ did not err by not affording more weight to psychologist Stock's opinion.

**Testimony of Plaintiff, His Father, and His Former Employer**

Plaintiff argues that the ALJ did not properly consider his subjective complaints and the testimony of his father and former employer.[6]

The court considers this argument in the context of the ALJ's consideration of the record generally. Generally, the ALJ "must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of any pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Id..

---

[6]At the hearing held before the ALJ, plaintiff's father testified that plaintiff had worked for him before, but if he were not his son, he would have fired him. He testified that plaintiff tried vocational training but that did not work out, and his eyesight has worsened since that time. Plaintiff had trouble reading in school. (Tr. 77-81.)

Former employer Jim Fowle testified that plaintiff worked for Fowle for about 13 months as a janitor. Plaintiff often ran into things while working. He only hired him to please plaintiff's father-in-law, who was a powerful person in a corporation Fowle contracted with. Plaintiff would miss areas due to an inability to see, although he appeared to be trying very hard. Had it not been for his father-in-law, he would have been fired in the first week. Plaintiff had problems with other workers because he worked slowly. (Tr. 68-76.)

Here, the ALJ properly considered the Polaski factors, and there is substantial evidence on the record supporting his decision to discredit plaintiff's subjective complaints. The ALJ considered plaintiff's vision limitations, but found that the medical evidence showed these limitations to be less than the presumptive disability criteria. (Tr. 14.) Plaintiff was able to obtain a driver's license, and had one at the hearing. (Tr. 14, 30.) Plaintiff complained of back pain, but he only had one doctor's visit for his pain. (Tr. 272.) The medical record does not show any medical opinion that this condition was disabling or required aggressive treatment. Plaintiff was prescribed pain relievers, and was told to wear a brace and to exercise. (Tr. 272-73.) There is no medical evidence in the record indicating plaintiff's diabetes limits his daily activities in any way. Further, plaintiff has not undergone any psychiatric care, nor is there any record that he takes any psychiatric drugs. Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (failure to pursue ongoing counseling or psychiatric treatment supported ALJ's conclusion that plaintiff's psychiatric complaints were not credible).

Plaintiff also participates in a full range of daily activities. He vacuums, cooks, shops, washes laundry, and mows the lawn. While the ALJ may not make a credibility determination based solely on daily activities, Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996), these activities may be considered in the context of the full record. The full record, including consideration of plaintiff's daily activities and the medical evidence, supports that ALJ's finding that plaintiff's subjective complaints are not fully credible.

When assessing a plaintiff's subjective complaints, the ALJ must also consider the observations of others. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). The ALJ found that the opinions of plaintiff's father and former employer are consistent with the ALJ's findings. When plaintiff worked for them, he did janitorial work, some weed cutting, brush-hogging, and grass cutting. Both testified that plaintiff was unable to do this work, which the ALJ also decided. Further, as far as their testimony concerns plaintiff's limitations due

to his vision loss, the ALJ found these limitations not credible based on the medical evidence. (Tr. 14.)

The ALJ did not err by finding that the third-party observations were not substantial evidence that plaintiff cannot do work in the national economy other than his past relevant work.

### Ability To Do Other Work

Plaintiff's final argument is that the ALJ's finding that he can do other work in the national economy is not supported by substantial evidence. The court disagrees.

The ALJ found that plaintiff maintained the RFC to lift 50 pounds and occasionally carry 30 pounds; that he had a verbal IQ of 87, a performance IQ of 77, and a full scale score of 80; and that he has visual acuity of 20/50 at a distance in each eye and for both eyes together, or with a distance visual acuity in one eye of 20/60 and 20/100 in the other, and 20/40 near vision. He could do less than the full range of light work, but the ALJ found that there was a significant number of jobs he could perform.

Plaintiff's treating eye doctor, Kathy J. Lentz, M.D.,[7] never stated that plaintiff was significantly limited because of his eyesight. She even said that plaintiff's limited eyesight probably did not prevent him from sustaining a full time job. (Tr. 275-76.) No medical evidence supports a finding that plaintiff was not able to lift 50 pounds and occasionally lift 30 pounds. He testified that he could lift up to 50 pounds, and carry up to 30 pounds before his back problems. But plaintiff's back pain was not so limiting that it required multiple

---

[7]On September 7, 2004, Dr. Lentz noted that plaintiff had corrected vision of 20/60 in the right eye, and 20/100 in the left eye. She noted he quit driving. (Tr. 280-81.) On September 27, 2004, Dr. Lentz completed a visual residual functional capacity report. She had treated plaintiff since September 26, 1990. She opined plaintiff could "probably" engage in gainful employment on a reliable basis for eight hours a day, 40 hours a week. She noted his pain medication caused more blurry vision, and that he had complained of back pain to her, but that was not her expertise. She noted his limitations would frequently affect his attention and concentration, but that he should not be absent from work at all on account of his vision. (Tr. 275-76.)

doctor visits.  He testified that he could stand eight hours of an eight-hour workday, and could walk for an hour.  (Tr. 54-55.) The IQ scores attributed to plaintiff are consistent with the most recent Wechsler IQ test administered to plaintiff by Vincent Stock.  (Tr. 288.)

The VE testified that, when considering a hypothetical with these limitations, there was work such a person could do.  (Tr. 84, 87.)  The VE testimony is substantial evidence that the plaintiff can perform other work.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).

Therefore, for the above reasons, the decision of the Commissioner of Social Security is affirmed.  An order in accordance with this memorandum is filed herewith.


/S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**


Signed on February 26, 2007.